## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

QUANTAE BUTLER,                          *

Plaintiff,                               *

v.                                       *          Civil Action No. ELH-21-736

WARDEN, *et al.*,                        *

Defendants.                              *

                                        ***

## MEMORANDUM OPINION

The self-represented plaintiff, Quantae Butler, filed suit pursuant to 42 U.S.C. § 1983 against Warden Calvin Wilson of the Chesapeake Detention Facility ("CDF"); Howard Muthungu, RN, and Desha Bedford, MD.[1] ECF 1; ECF 3. I shall refer to Nurse Muthungu and Dr. Bedford collectively as the "Medical Defendants." Butler alleges that defendants were negligent; failed to provide adequate medical care for nerve and back pain; and caused him to acquire COVID-19. *Id*. at 3-5. He seeks appointments with a neurologist and an orthopedic surgeon as well as monetary damages. *Id*. at 3.

Warden Wilson has moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 20. The motion is supported by a memorandum of law (ECF 20-1) (collectively, "Wilson Motion"). ECF 20-2 – 20-6. The Medical Defendants have also moved to dismiss or, in the alternative, for summary judgment. ECF 19. Their motion is supported by a memorandum (ECF 19-1) (collectively, "Medical Motion"), as well as about 250 pages of medical records (ECF 19-4) and affidavits. ECF 19-3, ECF 19-5.

---

[1] The Clerk shall amend the docket to reflect the correct names of Warden Calvin Wilson; Howard Muthungu, R.N.; and Desha Bedford, M.D.

Butler was notified of his right to respond to the motions. ECF 21; ECF 22; *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  In December 2021, Butler filed a motion for extension of time to respond.  ECF 24.  The motion was promptly granted.  ECF 25.  However, no response has been filed to either motion.

The matter is now ripe for disposition.  Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, I shall grant Warden Wilson's motion to dismiss.  I shall construe the Medical Motion as a motion for summary judgment, and I shall grant it.[2]

## I.       Factual Background

In his Amended Complaint (ECF 3), Butler alleges that he was repeatedly denied treatment for his chronic nerve and back pain and that his numerous sick call requests were ignored.  ECF 3 at 4.  Specifically, Butler claims that Dr. Bedford told him there was nothing she could do for his pain and prescribed him only Tylenol, which is not effective for nerve pain.  *Id*.  Butler claims that the Medical Defendants denied his request to see a neurologist.  *Id*.  In addition, Butler alleges that he was placed in a cell with an inmate who was quarantining, and that he (Butler) had chest pains and tested positive for COVID-19 soon thereafter.  *Id*. at 5.  Butler claims that he discussed his concerns about his medical care with the Warden, but that there was no response.  *Id*.

Medical records (ECF 19-4) show that Butler was seen for an initial physical exam at CDF on October 22, 2020.  ECF 19-4 at 5; *see also* ECF 19-3 (Decl. of Dr. Bedford), ¶ 5.  He has a history of gunshot wounds and reported that he suffered from leg, back, and chest pain.  *Id*.

---

[2] Butler's Amended Complaint includes an allegation as to "institutional operations and medical department for contracting Covid."  ECF 3 at 2.  To the extent that Butler intended to state an Eighth Amendment claim for failure to protect him from contracting COVID-19, he has failed to do so.  In addition to naming anonymous operations and medical staff, he provides no facts as to how anyone caused him to contract COVID-19.

Plaintiff was undergoing detox protocol for daily use of Tramadol and Percocet.  ECF 19-3, ¶ 5. And, he was prescribed Tylenol-codeine # 3,[3] ECF 19-4 at 8, to prevent withdrawal symptoms. ECF 19-3, ¶ 5.  He was also referred to the chronic care clinic ("CCC") for pain management. ECF 19-4 at 5, 10.  Through October 27, 2020, Butler was monitored regularly for opioid withdrawal symptoms, including blood pressure checks.  *Id*. at 15-40.

On October 26, 2020, Butler placed a sick call request, complaining that he was suffering from chronic pain due to severe nerve damage.  ECF 19-4 at 46.  Butler placed another sick call request on October 27, 2020, regarding a rash.  *Id*. at 41.  On October 28, 2020, at 10:13 a.m., Butler saw Ifeyinwa C. Ibeanu, N.P. for the rash and pain.  *Id*. at 42.  He stated that the Tylenol #3 was not helping, and he was again referred to the CCC for follow-up.  *Id*.

At 10:47 a.m. the same day, Butler saw Dr. Bedford for a chronic care visit.  *Id*. at 48.  Dr. Bedford continued the same medications, ordered a follow-up in one month, and requested Butler's prior pain management records.  *Id*. at 49-50; ECF 19-3, ¶ 10.  Butler continued to undergo temperature checks, sometimes multiple checks per day, until November 4, 2020.  ECF 19-4 at 51-61, 68-70, and 73.

Butler saw Chibuzo R. Ogugua, R.N. on October 30, 2020, for complaints of heartburn, for which he was given "Pepto Bismo[l]."  ECF 19-4 at 55.  Butler also complained of chest pain from a gunshot wound, and Nurse Ogugua noted that he was on pain medication.  *Id*.  That same day, Butler submitted a sick call request complaining of insomnia due to chronic pain, lack of proper medication, and requesting an x-ray.  *Id*. at 62.  He saw Melecia K. Henson, P.A., for these

---

[3]  Tylenol #3 is an acetaminophen mixture with codeine phosphate.  *See* https://druginfo.nlm.nih.gov/drogportal/rn/67889-72-9 (last visited August 1, 2022).

issues on November 2, 2020.  *Id*. at 63.  She ordered a psychiatry consult, a follow-up with CCC, and a chest x-ray.  *Id*. at 64-66.

Butler submitted sick call requests on November 5 and November 10, 2020, again complaining of severe nerve pain.  ECF 19-4 at 72, 84.  Ibeanu saw Butler on November 12, 2020, for a provider visit regarding pain due to bullet fragments.  *Id*. at 78.  He was continued on the same medication and referred to CCC for follow up.  *Id*.  Notes indicate that an x-ray was ordered, but no results have been provided.  Ibeanu stated she would follow up with radiology.  *Id*.

On November 18, 2020, Dr. Bedford saw Butler for a provider chronic care visit.  ECF 19-4 at 87; ECF 19-3, ¶ 14.  They discussed adding Elavil for chronic pain, but Butler declined that medication.  ECF 19-4 at 88. The next day, Butler submitted another sick call request, complaining of nerve pain.  *Id*. at 96.

An officer brought Butler to the clinic for an unscheduled visit with Ibeanu on November 20, 2020, due to plaintiff's complaint of lower back stiffness and his inability to walk.  ECF 19-4 at 93.  Butler requested that he be sent to the hospital if they could not help him with his pain.  *Id*. Ibeanu advised continuing on medication, as prescribed by CCC.  *Id*.  She also prescribed Baclofen[4] and ordered Butler to be placed on a bottom tier and bottom bunk.  *Id*.

Dr. Bedford saw Butler for a provider visit on November 25, 2020.  ECF 19-4 at 101-102; ECF 19-3, ¶ 16.  She discontinued Tylenol and ordered Lyrica.  *Id*.[5]

---

[4] Baclofen is used in the treatment of muscle spasticity, especially due to spinal cord injuries.  *See* https://druginfo.nlm.nih.gov/drugportal/name/baclofe*n* (last visited June 15, 2022).

[5] Lyrica is used as an analgesic in the treatment of neuropathic pain.  *See* https://druginfo.nlm.nih.gov/drugportal/name/lyrica (last visited August 1, 2022).

Butler submitted another sick call request on November 29, 2020, again complaining of severe nerve pain. ECF 19-4 at 115. Plaintiff submitted another request on December 9, 2020, complaining that the Lyrica was not working. *Id*. at 119.

On December 16, 2020, Butler saw Dr. Bedford because of "complaints of persistent lower back pain . . . ." ECF 19-3, ¶ 17. He asked to see a specialist, as he was scheduled to have surgery prior to his incarceration. ECF 19-4 at 123. Nevertheless, he said his pain had improved with Lyrica. ECF 19-3, ¶ 17. Dr. Bedford believed that plaintiff's "current pain medication regimen was appropriate for his condition." *Id.* She continued plaintiff's medications, ordered a follow up in three months, and requested x-rays. ECF 19-4 at 123-4, 126.

On December 30, 2020, Butler underwent lumbar and thoracic spine x-rays. The x-rays showed no acute osseous (bone) abnormality but revealed multiple left-sided bullet fragments. ECF 19-4 at 120-121; *see also* ECF 19-3, ¶ 18.

Dr. Bedford saw Butler on January 4, 2021, for a sick call request, and noted that his pre-incarceration pain management records had been received. ECF 19-3, ¶ 19. Plaintiff stated that his request had been addressed. ECF 19-4 at 127. Medications were continued, as previously ordered. ECF 19-4 at 128; ECF 19-3, ¶ 19.

Butler submitted a sick call request on January 22, 2021, complaining of continuous pain all over. ECF 19-4 at 129. He put in another sick call request on February 4, 2020, complaining that his sick call requests were not being answered and his medical problems were not being addressed. *Id*. at 134. Butler claimed that the Lyrica was not working and he was in constant pain. *Id*. On February 9, 2020, Butler made a sick call request in which he requested an appointment with a neurologist due to his worsening condition. *Id*. at 135.

Butler tested positive for COVID-19 on February 15, 2021. His medical condition remained stable. He was asymptomatic and was closely monitored during ten days of isolation. ECF 19-4 at 138-189; ECF 19-3, ¶ 20.

On March 3, 2021, Butler submitted a sick call request, complaining of a burning sensation throughout much of his body, chest pain, and shortness of breath. ECF 19-4 at 190. He put in another sick call request on March 15, 2021, asking to see Dr. Bedford to discuss his nerve pain. *Id*. at 191.

Dr. Bedford saw Butler on March 19, 2021. *Id*. at 192. She noted that Butler walked with a cane and had an antalgic gait and tenderness to palpation of the lumbar spine. ECF 19-3, ¶ 22. Dr. Bedford indicated that she would request a consult with neurosurgery. ECF 19-4 at 193. Notably, Dr. Bedford submitted the request for a neurosurgery evaluation the same day, because of plaintiff's complaints of "worsening back pain." *Id*. at 196; *see also* ECF 19-3, ¶ 22.

Butler next saw Dr. Bedford on March 25, 2021, for complaints of increased back pain, numbness, and tingling. ECF 19-4 at 226. She ordered the transfer of plaintiff to the hospital for further evaluation. *Id*. at 227, 228, 232. Butler, then 43 years old, *id.*at 206, underwent CT imaging of his entire spine on March 26, 2021. ECF 19-3, ¶ 24.

In particular, plaintiff had a CT scan of the lumbar, cervical, and thoracic spine at the University of Maryland Medical Center. ECF 19-4 at 199-224. Of import, there was no indication of acute compression fracture within the cervical, thoracic, or lumbar spine. *Id*. at 199-221, 223. A "[m]ild disc bulge at L3-L4" was noted. Moreover, although there was "partial opacification of the distal half of the lumbar spine," it did "not demonstrate any significant compression upon the thecal sac or mass effect upon the cauda equina." *Id*. at 199. And, there was "grossly no significant bony spinal canal or neural foraminal narrowing elsewhere in the lumbar spine." *Id.*

Dr. Bedford avers, ECF 19-3, ¶ 7 (record citations omitted):  "The CT scan of the patient's lumbar spine showed chronic posttraumatic deformity of the left transverse process of the L3 vertebral body and an osseous fragment at superior right articular process at the L4 level without significant spinal canal narrowing but no significant degenerative changes. . . . . The physicians in the emergency room determined that there were no impingement of the patient's spine and that no further intervention was necessary. . . . The patient returned to CDF in no acute distress."  *Id.* at 229-30.

Upon return from the hospital, Butler saw Petrel Martin-Hall, CRNP.  The CRNP reviewed discharge instructions, including lower back exercises.  *Id.* at 230-231.

On April 8, 2021, Butler submitted a sick call request complaining of nerve pain and tingling, and stating that the Lyrica does not work.  ECF 19-4 at 238.  He saw Ngozi Ezike-Ejiogu, M.D. on April 16, 2021, for pain management.  *Id.* at 241.  Dr. Ezike-Ejiogu ordered a trial of prednisone to reduce inflammation and advised plaintiff to adhere to physical therapy exercises. *Id.* at 242.  Butler stated that he believed orthopedic surgery would cure his pain, and Dr. Ezike-Ejiogu explained that the CT scans did not indicate a fracture.  *Id.*[6]

Additional facts are included, *infra*.

## II.     Standards of Review

### A.

Warden Wilson has moved to dismiss or for summary judgment.  I will construe the Wilson Motion under Rule 12(b)(6).

---

[6]  Of course, many people who do not have a spine fracture nonetheless undergo spine surgery.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-05; *Weil*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Simply put, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v.*

9

*Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See*

*Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not

attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines,* 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods*, 855 F.3d at 642; *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Further, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Plaintiff is self-represented. And, the pleadings of a pro se litigant are construed generously to allow for the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). But, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the

court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

## B.

The motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).

This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom*; *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is

properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549

15

F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Butler has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the Medical Motion as one for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat a summary judgment motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).  But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Pursuant to Fed. R. Civ. P. 56(c)(1), a party asserting a dispute of fact "must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ."  The moving party may also show that he is entitled to summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

And, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).  Rather, "there must be evidence on which the jury could reasonably find for the nonmovant."  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (alteration and internal quotation marks omitted).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus, the trial court may not make credibility determinations on summary judgment.  *Kellen v. Lott*, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006). Therefore, in the face of conflicting evidence, such as competing

affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted).  Moreover, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, the court must find a genuine dispute as to material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-86.  "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."  *Iraq Middle Mkt. Dev. Found.*, 848 F.3d at 238.

Because Butler is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24.

### III.      Discussion

In the Wilson Motion, the Warden contends that: (1) the Eleventh Amendment bars the suit against him in his official capacity; (2) Butler fails to state constitutional violations cognizable under § 1983; (3) Butler was not subjected to deliberate indifference to a serious medical need; and (5) Warden Wilson is entitled to qualified immunity.  ECF 20-1.

In the Medical Motion, the Medical Defendants argue that: (1) Butler's common law claims fail because he has not complied with the Maryland Health Care Malpractice Claims Act, Md. Code (2020 Repl. Vol), § 3-2A-01 *et seq.* of the Courts and Judicial Proceedings Article; (2) Butler fails to establish that the Medical Defendants exhibited deliberate indifference to a serious medical need; and (3) Butler's request for injunctive relief should be denied.  ECF 19-1.  As noted, Butler did not respond to either motion.

### A.  Section 1983 and the Eighth Amendment

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of

a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

Butler's claims regarding the denial of adequate medical care are governed by the Eighth Amendment to the Constitution, which prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Hixson v. Moran*, 1 F. 4th 297, 302 (4th Cir. 2021); *Thompson*, 878 F.3d at 97. "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

In order to state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98

(quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).  Thus, an Eighth Amendment claim for deliberate indifference to serious medical needs "includes objective and subjective elements." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021.  The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available.  *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Hixson*, 1 F. 4th at 302; *Schilling*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King v. Rubenstein*, 825 F.3d 206, 219 (4th Cir. 2016).

Proof of an objectively serious medical condition does not end the inquiry, however.  As the Court explained in *Heyer*, 849 F.3d at 209-10: "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  The Fourth Circuit has said: "True subjective recklessness requires knowledge

both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Mays*, 992 F.3d at 300; *see also Lightsey*, 775 F.3d at 178 (stating that "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction") (emphasis in *Lightsey*); *Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). But, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Deliberate indifference "is a higher standard for culpability than mere negligence or even

civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Formica*, 739 F. App'x at 754; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). In other words, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106). And, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v.*

*Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Rather,

a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable

effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir.

1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475

F. App'x 860 (4th Cir. 2012).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he
> demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive,
> well-documented, or expressly noted by prison officials in the past, and the
> circumstances suggest that the defendant-official . . . had been exposed to
> information concerning the risk and thus must have known about it . . . ." *Parrish
> ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in
> original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114
> S.Ct. 1970).  Similarly, a prison official's "[f]ailure to respond to an inmate's
> known medical needs raises an inference [of] deliberate indifference to those
> needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on
> other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, an official may avoid liability "if

[he] responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511

U.S. at 844.  And, reasonableness of the actions taken must be judged in light of the risk the

defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000)

(citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually

taken in light of suicide risk, not those that could have been taken)).

**B.  Medical Defendants**

Butler contends that Dr. Bedford and Nurse Muthungu ignored his sick call requests, failed

to treat his debilitating pain, and refused to send him to a neurologist.  ECF 3.

The medical record consists of about 250 pages spanning six months.  The record

demonstrates that Butler had regular and frequent access to his medical providers, who repeatedly

adjusted medication, ordered accommodations such as a lower bunk, reviewed and encouraged physical therapy exercises, and sent him to the hospital for extensive spinal imaging. ECF 19-4. Furthermore, the Medical Defendants submitted declarations that demonstrate they were not deliberately indifferent to any serious medical need. ECF 19-3 (Dr. Bedford), ¶ 28; ECF 19-5 (Muthungu, R.N.), ¶ 10. And, Butler has not contested any of this evidence.

I turn to review the records.

### 1. Dr. Bedford

Dr. Bedford saw Butler for a provider visit at least seven times between October 28, 2020, and March 25, 2021. ECF 19-4 at 48, 87, 101, 122, 127, 192, and 226. In addition to reviewing plaintiff's ongoing medications, she prescribed Lyrica, a non-formulary drug requiring separate approval. *Id*. at 101, 104-105. She ensured that plaintiff received Lyrica when he was transferred to another facility for COVID-19 isolation. *Id*. at 157.

Dr. Bedford also placed a request for a neurosurgery consult on March 19, 2021, and she sent Butler to the hospital for imaging on March 25, 2021. *Id*. at 120-121, 227-228, 232. The imaging showed that no surgical intervention was necessary. *Id*. at 199-224.

There is no evidence that Dr. Bedford's conduct was reckless or so inadequate as to support a claim of deliberate indifference. To the contrary, Dr. Bedford saw Butler regularly and took action to alleviate, diagnose, and treat his pain. As to whether he needs a neurologist or an orthopedic surgeon, disagreements between medical staff and an inmate as to the necessity for, or the manner or extent of, medical treatment do not amount to a constitutional injury. *See Estelle*, 429 U.S. 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Butler's

mere disagreement with the course of treatment provided by medical providers does not support a valid constitutional claim.  *See Russell,* 528 F.2d at 319.

Furthermore, Dr. Bedford declared that she did not deny Butler medical treatment or disregard or ignore any of his medical needs, and that her decisions regarding Butler's treatment were based on her medical judgment.  ECF 19-3 at 9.  Again, Butler has not contested the Declaration.

In the absence of any genuine issue of material fact as to the evidence presented, summary judgment will be granted in favor of Dr. Bedford.

### 2.  Nurse Muthungu

Similarly, there is no evidence that Nurse Muthungu denied Butler adequate medical care, nor that he was deliberately indifferent to any serious medical need.  Indeed, there are no medical records that reflect any interactions between Muthungu and Butler.  In fact, Nurse Muthungu declared that he did not provide any medical treatment to Butler and he does not have the authority to "dictate the course of any patient's medical treatment."  ECF 19-5 at 2.

Nurse Muthungu explains that he is employed as a Charge Nurse, responsible for administrative tasks, supervising the nursing staff, and responding to informal grievances submitted by patients.  *Id*.  In this capacity, Nurse Muthungu responded to complaints submitted by Butler, noting that he believed Butler's complaints had been addressed by medical staff.  *Id*. at 4-5. Butler has not contested Nurse Muthungu's statement that he did not provide Butler with any medical treatment, that he was not responsible for Butler's medical treatment, or that he believed Butler's medical complaints had been appropriately addressed by other medical staff.

Moreover, Butler's allegations do not suggest a basis for individual supervisory liability on the part of Nurse Muthungu in his role as charge nurse.  In *Shaw v. Stroud*, 13 F.3d 791, 799

(4th Cir. 1994), the Fourth Circuit articulated that supervisory liability requires that a defendant: (1) had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. Butler has made no allegations or presented any facts to demonstrate any of these criteria.

As there is no evidence that Nurse Muthungu was deliberately indifferent to a serious medical need, he is entitled to summary judgment in his favor.

### 3.   Conclusion

The medical records provide no support for Butler's claim that he was denied adequate medical care by Dr. Bedford or Nurse Muthungu.

### C.  Warden Wilson

### 1.   Individual Capacity

Butler alleges that Warden Wilson ignored his grievances regarding inadequate medical care.  ECF 3.  Viewed in the light most favorable to Butler, the Amended Complaint does not establish a claim against Warden Wilson on this basis or for the denial of adequate medical care.

Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  Butler makes no allegations that Warden Wilson personally took any action or inaction that caused him harm. Furthermore, he has not set forth any allegations or facts that would establish supervisory liability.

As described above, supervisory liability requires that a defendant: (1) had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the response to that knowledge was so inadequate as to show deliberate

inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799. Additionally, without subjective knowledge, a prison official is not liable.

Denial of Butler's grievances does not alone establish liability. *Whittington v. Ortiz,* 307 Fed, Appx. 179, 193 (10th Cir. 2009) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation).

Accordingly, I shall dismiss Butler's claims against Warden Wilson in his individual capacity.

### 2.   Official Capacity

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Warden Wilson is a Maryland state employee. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Accordingly, any claims against Warden Wilson in his official capacity are barred by the Eleventh Amendment., *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed.

### IV.   Conclusion

For the foregoing reasons, I will grant defendants' motions.[7] In particular, I shall dismiss the claims against Warden Wilson. And, I shall grant summary judgment in favor of Dr. Bedford and Nurse Muthungu in regard to the deliberate indifference claims against them.

---

[7] In light of the court's ruling, an analysis of defendants' remaining arguments is not

A separate Order follows.

___August 26, 2022___                              _____/s/_____
       Date                                          Ellen L. Hollander
                                         United States District Judge

---

necessary.  Furthermore, to the extent that Butler intended to bring a state law claim for medical malpractice, the claim will be dismissed, without prejudice.  "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction."  *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).